FILED
2006 Mar-28 PM 03:55
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **JAMES HARRISON,** | } |
| Plaintiff, | } |
| v. | } Case No.: 2:04-CV-2409-RDP |
| **AMERICAN FAMILY CARE, INC.,** | } |
| Defendant. | } |

## **MEMORANDUM OPINION**

**I.   INTRODUCTION**

Pending before the court is Defendant American Family Care, Inc.'s ("AFC") Motion for Summary Judgment (Doc. #15) filed on January 5, 2006. Plaintiff filed his opposition to summary judgment (Doc. #21) on February 9, 2006, and AFC filed its reply (Doc. #23) on February 20, 2006. As explained more fully below, the only claim remaining on AFC's Motion for Summary Judgment is Plaintiff's hostile work environment.[1] Because the court concludes that Plaintiff has adduced sufficient evidence from which a reasonable jury could find in his favor on his racial hostile environment claim, summary judgment is due to be denied as to that particular count.

---

[1] As stated in his opposition, "Plaintiff is only pursuing the hostile work environment claim." (Doc. #21 at 11 n.2).

**II.     STATEMENT OF FACTS**[2]

AFC operates a number of urgent care clinics in Alabama, primarily in the Birmingham area, and employs several hundred people. AF No. 1.[3] Each clinic has doctors on staff, a clinic manager, front office or reception employees, and medical staff including lab techs, phlebotomists, and multi-techs. AF No. 2. Plaintiff James Harrison was employed with AFC in a medical staff position from May 2000 until May 2004. AF No. 3.

Plaintiff alleges that a number of incidents of racially-charged conduct and comments took place during the time in which he was employed by AFC. More specifically, Plaintiff complains that an hourly employee named Chuck Wingate put a picture on the clinic bulletin board of the Klumps from the Nutty Professor movie, to which Plaintiff's face had been added. AF No. 12. Wingate admits putting the picture on the bulletin board, as a joke. AF No. 13.1. Plaintiff was extremely overweight at the time, and has since undergone gastric bypass surgery. AF No. 13.2.

---

[2] These are the facts for summary judgment purposes only. They may not be the actual facts. *See Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994) ("'[W]hat we state as 'facts' in this opinion for purposes of reviewing the rulings on the summary judgment motion [ ] may not be the actual facts.'") (citation omitted).

[3] The designation "AF" stands for admitted fact and indicates a fact offered by AFC that Plaintiff has admitted in his written submissions on summary judgment, in his deposition testimony, or by virtue of any other evidence offered in support of his case. Whenever Plaintiff has adequately disputed a fact offered by AFC, the court has accepted Plaintiff's version. The court's numbering of admitted facts (*e.g.*, AF No. 1) corresponds to the numbering of AFC's Statement of Facts as set forth in Doc. #16 and responded to by Plaintiff in Doc. #21. A number following a decimal point corresponds to the particular sentence within the numbered statement of facts. For example, (AF No. 13.2) would indicate the second sentence of paragraph 13 of AFC's Statement of Facts is the subject of the court's citation to the record. Any other facts referenced by the parties that require further clarification are dealt with later in the court's opinion.

Plaintiff also maintains that Wingate placed a picture of Michael Jackson on the bulletin board onto which white employee Rachael Rollan had been superimposed so that it appeared as if they were standing together. AF No. 14.1. Wingate admits engaging in this behavior and explains that he did so as a joke because Rollan was a big Michael Jackson fan. AF No. 14.2.

Plaintiff also asserts that Wingate told him that black people had hair like Velcro (AF No. 15),[4] that they cannot stay in the sun because darkness absorbs the heat (AF No. 16), and that they "speak Ebonics." AF No. 20.[5] In addition, Plaintiff testified that Wingate called an hourly white co-employee named Kevin Jablonsky a "wigger" (AF No. 17), referred to Jablonsky's jewelry as a "Mr. T starter set" (AF No. 18), and commented at least one time that Jablonsky was "acting ghetto." AF No. 19. There is sufficient (although disputed) evidence in the record that would permit a trier of fact to find that other employees made similar remarks: an hourly employee, Todd Smith, called Jablonsky "white chocolate" (AF No. 22); Clinic Manager, Louise Alexander, said that Jablonsky was "acting black" and that he would be transferred to the "ghetto clinic" (AF No. 24); Judy Pearce told Jablonsky that he should stop acting black (AF No. 25); and another hourly employee, Cassie Blevins, stated that Jablonsky should act white. AF No. 26.

### III. STANDARD ON SUMMARY JUDGMENT

Summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R .Civ. P. 56(c). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant. *See Fitzpatrick*

---

[4]This particular comment by Wingate arose when Plaintiff's Supervisor, Loren McDonough, told Plaintiff that he had something in his hair. AF No. 23.

[5]Plaintiff admits that Wingate was joking and teasing when he made these comments and posted the picture. AF No. 21.

*v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

A plaintiff in an employment discrimination case maintains the ultimate burden of proving that the adverse employment decision was made because of intentional discrimination. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000); *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509-12 (1993); *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1184 (11th Cir. 1984). Although the Supreme Court previously established the basic allocation of burdens and order of proof in a disparate treatment case, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981), as modified by *Desert Palace v. Costa*, 539 U.S. 90 (2003), that allocation scheme applies only in cases where there is no direct evidence of discrimination, *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 595 (11th Cir. 1987).

Under the *McDonnell Douglas/Burdine* scheme, a plaintiff first has the burden of proving by a preponderance of evidence a *prima facie* case of discrimination. Second, once the plaintiff proves a *prima facie* case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment decision. Finally, if the defendant carries its burden, the plaintiff must *either* prove by a preponderance of the evidence that the legitimate reasons offered by the defendant are merely a pretext for discrimination *or* present sufficient evidence, of any type, for a reasonable jury to conclude that discrimination was a "motivating factor" for the employment action, even though defendant's legitimate reason may also be true or have played some role in the

decision. *McDonnell Douglas Corp.*, 411 U.S. at 802-05; *Burdine*, 450 U.S. at 252-54; *Desert Palace*, 539 U.S. at 101-02.

## IV.   ANALYSIS

Plaintiff asserts that he was subjected to a racially hostile work environment based upon the actions and comments made by co-employee Wingate and other AFC personnel. Title VII provides that an employer shall not "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). That statute has been interpreted to specifically allow claims for harassment to rest upon the theory of a hostile work environment. *See, e.g., Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998).

A plaintiff attempting to show that he has been subjected to a hostile work environment must prove certain elements to establish the claim. These elements include proof that: (1) the employee belongs to a protected group; (2) the employee was subjected to unwelcome harassment; (3) the harassment complained of was based upon race; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) there exists a basis for holding the employer liable.[6] *See Henson v. City of Dundee*, 682 F.2d 897, 903-04 (11th Cir. 1982); *see also Johnson v. Booker T. Washington*

---

[6]Although included in its Answer, in moving for summary judgment, AFC has not raised a *Faragher* defense to Plaintiff's hostile work environment claim. In any event, the record at a minimum reflects that a material factual dispute exists over Plaintiff's reporting of the alleged offensive conduct, and AFC's failure to take corrective action. *Edwards v. Wallace Community College*, 49 F.3d 1517, 1522 (11th Cir. 1995) ("The employer will be held liable if it fails to discover a hostile atmosphere and to take appropriate remedial steps.") (citing *Busby* v. *City of Orlando*, 931 F.2d 764, 785 (11th Cir. 1991)).

*Broad. Serv., Inc.*, 234 F.3d 501, 508 (11th Cir. 2000); *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999).  The question presented by Defendant's motion is whether Plaintiff has put forth sufficient evidence to establish the fourth element enumerated above.  The court concludes that he has.

The following four factors must be considered in analyzing whether the harassment was sufficiently severe and pervasive: (1) the frequency of the conduct, (2) the severity of the conduct, (3) whether the conduct is physically threatening and humiliating, and (4) whether the conduct unreasonably interferes with the employee's job performance.  *Allen v. Tyson Foods*, 121 F.3d 642, 647 (11th Cir. 1997) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)); *Chambers v. Walt Disney World Co.*, 132 F. Supp. 2d 1356, 1370 (M.D. Fla. 2001).  The court must examine the conduct in context and determine, under the totality of the circumstances, whether the alleged conduct creates a hostile or abusive working environment.  *Mendoza*, 195 F.3d at 1246.

A hostile work environment is created "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,'that is sufficiently severe or pervasive." *Harris*, 510 U.S. at 211.  Plaintiff may have a viable hostile environment claim even if the racial remarks were not directed at him.  *Edwards v. Wallace Community College*, 49 F.3d 1517, 1521 (11th Cir. 1995); *Busby*, 931 F.2d at 785; *Underwood v. Northport Health Services, Inc.*, 57 F. Supp. 2d 1289 (M.D. Ala. 1999).

In support of his claim, Plaintiff points to several examples of racially offensive behavior in which he was a direct target.  He also points to other incidents which affected him indirectly.  The Eleventh Circuit found that testimony regarding racial slurs not directly made by supervisors or not made in the plaintiff's presence goes directly to the issue of racial harassment on the job.  *Busby*, 931

F.2d at 785. Furthermore, the Eleventh Circuit has held that "'[t]he fact that many of the epithets were not directed at [the plaintiff] is not determinative' of whether a work atmosphere is polluted with racial discrimination." *Busby*, 931 F.2d at 785 (citing *Walker v. Ford Motor Co.*, 684 F.2d 1355, 1359 n.2 (11th Cir. 1982)); *see also Wallace*, 49 F.3d at 1522 ("A plaintiff may have a viable hostile environment claim even if the racial remarks were not directed at her.") (citing *Busby*, 931 F.2d at 785). Under Plaintiff's version of the facts, a reasonable trier of fact could conclude that the alleged racially hostile environment was sufficiently severe and pervasive.[7]

## V.   CONCLUSION

For the reasons explained above, the entry of summary judgment in favor of AFC on all claims other than for hostile work environment is appropriate.[8] However, material factual disputes preclude the entry of summary judgment in favor of AFC on Plaintiff's hostile work environment claim based on race. Accordingly, that portion of AFC's Motion for Summary Judgment is due to be denied. The court will enter an order consistent with this Memorandum Opinion.

---

[7]In its reply brief, AFC has attempted to support its arguments by citing other cases which were decided by other judges of this court in which it was a party-defendant, but none of those cases involved an involuntary dismissal of a contested hostile work environment claim. Instead, those cases involved plaintiffs who either did not come forward with any evidence in opposition to summary judgment or, alternatively, voluntarily dismissed the hostile work environment claim at the summary judgment stage. *Kimberly Green Crear v. American Family Care, Inc.*, Case No.: 2:04-CV-2408-SLB (Doc. #18 at 2) ("[T]he court has been informed by plaintiff's counsel that plaintiff does not oppose the granting of defendant's Motion for Summary Judgement and the dismissal of her claims."); *Quintina Dennis v. American Family Care, Inc.*, Case No.: 2:04-CV-0924-IPJ (Doc. #24 at 1 n.1) (noting plaintiff's voluntary dismissal of hostile work environment claim); *Evonna Smith v. American Family Care, Inc.*, Case No.: 2:04-CV-2411-IPJ (Doc. #16 at 2 n.3) (same).

[8]Plaintiff states that his original Complaint also includes claims for disparate pay and failure to promote. (Doc. #21 at 11). In moving for summary judgment, AFC believed that Plaintiff was also pursuing a claim for retaliation. (Doc. #16 at 7-9). Regardless of the parties' understanding of and intent with the pleadings, all these claims are due to be dismissed as Plaintiff has conceded that all claims, except for that involving an alleged hostile environment, are due to be dismissed.

**DONE** and **ORDERED** this      28th      day of March, 2006.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE